IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHIRLON MAYNARD )<br>               **Plaintiff,** )<br>                )<br>    **v.**                 )<br>                )<br>THE ARCHITECT OF THE CAPITOL )<br>                )<br>            **Defendant.** )<br>                ) | Civil Action 1:19-cv-00258 (RBW) |

**AMENDED COMPLAINT**

Plaintiff, Shirlon Maynard, brings this civil action against Defendant, the Architect of the Capitol (AOC) because the AOC has failed to abide by its own policies when it comes to protecting employees who are required to work in hazardous situations and has failed to pay Plaintiff, who is the Plaster Leader in the Paint Shop, the environmental hazard-pay to which he is entitled as a result of his regular exposure to lead based paint and asbestos.

Facing spending pressures, the Architect has stopped using professional hazardous materials experts to abate lead paint from the buildings that house Congressional offices. Rather than pay professionals to do the abatement work, the Architect assigned its painters and plasterers to perform the abatement with minimal training and supervision. Their lack of training and experience and dangerous work instructions resulted in unsafe work practices to the extent that Plaintiff regularly worked with toxic substances, including lead paint, asbestos and silica.

A recent example is indicative of the problem. On February 5, 2020, Mr. Maynard and another employee were ordered to perform plaster work in a small bathroom that was being renovated. Mr. Maynard arrived on the scene to find a large hole in the wall, with a current of air moving from behind the wall into the space where Plaintiff was assigned to work. Plaintiff was concerned because the area behind the wall was full of pipes and conduit covered in old insulation

that Plaintiff believed might contain asbestos. Plaintiff and his coworker sought the assistance of the supervisor of the insulator shop, whose job includes abating asbestos. The Insulator confirmed that there was loose and arable asbestos behind the wall that was likely blowing through the hole and into the work area. Thus, Mr. Maynard and his coworker were likely exposed to asbestos on that occasion. Prior to assigning the work to Plaintiff, none of his supervisors had visited the site to determine if there were any hazardous conditions or to implement the provisions of the Architect's safety regulations.

Despite requiring Mr. Maynard, and others, to work with these hazardous materials, the AOC has failed to change Mr. Maynard's "Rate of Basic Pay" to include the 8% environmental hazard pay premium to which he is entitled, and it has therefore failed to pay him the appropriate hourly rate, including when he works overtime, in violation of the Congressional Accountability Act.

## JURISDICTION

1. Plaintiff invokes the jurisdiction of this Court pursuant to the Congressional Accountability Act of 1995 (2 U.S.C. §1408 (a)), the Mandamus Act (28 U.S.C. § 1361) or the Administrative Procedures Act (2 U.S.C. § 701 *et seq.*) as well as 28 U.S.C. § 1331 (Federal Question).

2. Relief is also sought herein pursuant to 5 U.S.C. § 5596 (Back Pay Act), 28 U.S.C. § 2201 (Declaratory Judgment Act).

3. The unlawful employment practices alleged in this Complaint were committed in the District of Columbia.

4. The non-discretionary duties owed to the Plaintiff and other employees of the Architect of the Capitol, in relation to the Mandamus and Administrative Procedures

|     |     |
| --- | --- |
|     | Act claim were to be conducted in the District of Columbia. |
| 5.  | Plaintiff is a current employee of the Architect of the Capitol. |
| 6.  | Defendant Architect of the Capitol (Architect or AOC) is an "Employing Office" covered by the Congressional Accountability Act (2 U.S.C. § 1301(9)(D)). |
| 7.  | AOC is headquartered, and employs the Plaintiff, in the District of Columbia. |
| 8.  | 2 U.S.C. § 1313 of the Congressional Accountability Act extends the rights and protections of 29 U.S.C. §§ 206(a)(1) and (d), as well as 29 U.S.C. § 207, and 29 U.S.C. § 212(c) of the Fair Labor Standards Act to employees of the Architect of the Capitol and requires the Board of the Office of Compliance to propound regulations to implement the above-referenced sections of the Fair Labor Standards Act. |
| 9.  | 2 U.S.C. 1313(a), incorporating by reference 29 U.S.C. 207(a), requires the Architect to pay Plaintiff overtime wages at 1.5 times Rate of Basic Pay. |
| 10. | The regulations applicable to the Architect require the Architect to pay Wage Grade employees, such as Mr. Maynard, their Rate of Basic Pay, which includes "[t]he scheduled rate of pay plus any applicable night shift or environmental differential." *See* Exhibit 1, HRMD Manual at p. 4. |
| 11. | At issue here are the Architect's regulations governing working under hazardous circumstances which read, in pertinent part: |

9(e) Environmental Differentials

(1)  An AWS employee is entitled to environmental differential when performing assigned duties that expose him/her to an unusually severe hazard, physical hardship, or working condition as described in either Appendix A or Appendix B of this chapter that occurred on or after the effective date specified.

…

(2) Prior to directing an employee to work in conditions that may be hazardous, the AOC manager or supervisor must request an evaluation of the proposed

work, work site and working conditions by the Safety and Environmental Division (SED). The SED shall:

    (a) Verify the propriety and condition of all portable safety equipment.

    (b) Determine that employees who will perform the work have received any AOC- or OSHA-mandated training.

    (c) If required, verify that employees who will perform the work have received medical clearance to perform anticipated tasks.

    (d) Visit the work site to observe and analyze field conditions and determine whether the conditions are hazardous.

    (e) Review applicable AOC Safety Policies and OSHA regulations to validate findings and prepare a pre-work safety plan when required.

    (f) Develop a report containing findings and recommendations of whether work should be proceed as planned and how potential hazards should be mitigated.

(3) Should the work situation continue to be hazardous, the AOC Manager or Supervisor shall authorize payment of an environmental differential to employees who will be assigned to perform work. The following shall be documented in writing to support the need for payment of an environmental differential:

    (a) A description of the proposed work.

    (b) A description of the unusually severe working conditions or unusually severe hazards.

    (c) The name, position title, grade and organization of the employee(s) who will be performing the work.

    (d) An estimate of the amount of time required for each employee to carry out the work assignment(s).

    (e) A statement that SED was consulted concerning the proposed work assignment and the date of SED's report of findings and recommendations.

    (f) Upon completion of the work, the beginning and ending time of each employee's exposure to the unusually severe hazard, physical hardship or working condition will be annotated.

(4) A copy of the documentation shall be filed with the timecard of each employee who performed the work.

f.  On occasions where there is not sufficient lead time to follow the process outlined in paragraph 9.e.(1)-(3), above, the following abbreviated process may be followed:

   (1) The AOC Manager or Supervisor makes a telephone call to SED requesting an occupational safety and health review of the proposed work, work site and working conditions.

   (2) SED expedites their review of the proposed work, site and working conditions.

   (3) In consultation with SED, the AOC Manager or Supervisor ensures appropriate steps will be taken to address any health/safety issues raised.

   (4) The AOC Manager or Supervisor documents the need for environmental differential pay in writing, providing the information requested in 9(e)(3)( a)-( e), above.

   (5) Upon completion of the work, the beginning and ending time of each employee's exposure to the unusually severe hazard, physical hardship or working condition will be annotated.

12. Appendix B, which contains the environmental hazard premium pay applicable here, includes, in section 4 working with "poisons (toxic materials)" including "Handling and storing toxic chemical agents …; examining of material for signs of leakage or deteriorated material; decontaminating equipment and work sites; work relating to disposal of deteriorated material (exposure to conjunctivitis, pulmonary edema, blood infection, impairment of the nervous system, possible death)." *See* Exhibit 1, HRMD Manual at p. 36. Plaintiff contends that this, and possibly other portions of the appendix includes removal of lead-based paint. Additionally, Appendix B, section 16 specifically refers to "Asbestos. Working in an area where airborne concentrations of asbestos fibers may expose employees to potential illness of injury and protective devices or safety measures have not practically eliminated the potential for such personal illness or injury."

13. These rules are written in unambiguously mandatory language and intended to protect the painters, plasterers (like Plaintiff) plumbers, electricians, and insulators, among others, who undertake such hazardous duties as identifying, remediating and abating

5

        lead paint and asbestos containing materials, and to make sure they are compensated for working in those hazardous cicumstances.

14. The rules cited above create mandatory, nondiscretionary duties upon the Architect and its supervisors and managers to request the safety reviews identified in the regulations and to implement the safety measures identified in the regulations.

15. The Architect's internal regulations (*inter alia*), including HRMD Manual Chapter 532 (Appendix B), require it to include an 8% environmental hazard pay premium in Plaintiff's Rate of Basic Pay because he is required to work in "close proximity to poisons (toxic chemicals) which involve potential serious personal injury such as permanent or temporary, partial or complete loss of faculties and/or loss of life including exposure of an unusual degree to toxic chemicals, dust, or fumes of equal toxicity generated in work situations by processes [and/or] required to perform work assignments wherein protective devices and/or safety measures have been developed but have not practically eliminated the potential for such personnel injury."

16. With respect to his claim to have his environmental hazard pay included in his regular rate of pay, including as calculated for his overtime wages, Plaintiff has satisfied all administrative and judicial prerequisites to the institution of this action. The Plaintiff filed a timely Request for Counseling with the Office of Congressional Workplace Rights (formerly the Office of Compliance) on September 13, 2018 to raise the wage theft claim. That claim was filed within 180 days of the failure to pay Plaintiff at the correct rate for his overtime work.  Plaintiff engaged in the counseling process and filed a timely Request for Mediation on October 22, 2018, within 15 days of the conclusion of the Counseling Period.  The mediation in this matter occurred on

November 14, 2018, and Mediation closed on November 21, 2018. Plaintiff files this suit after the expiration of 30 days from the end of the Mediation Period, and before the expiration of 90-days.

17. With respect to his claim for mandamus relief under 28 U.S.C.§ 1361 or the Administrative Procedures Act, there are no administrative remedies identified in the law for Plaintiff to exhaust. That said, Plaintiff has asked his supervisors to implement the measures contained in the regulations, including on February 5, 2020, as well as during the mediation of his claim before the Office of Congressional Workplace Rights (formerly the Office of Compliance), and the Architect has refused to implement the procedures called for in its regulations.

## FACTS

18. Plaintiff is currently employed as a Plaster Leader at the Architect, in the House Office Buildings Jurisdiction.

19. At all times relevant to this complaint, Plaintiff has regularly been required (on both regular time and overtime) to: (a) abate lead paint or asbestos containing materials, without proper safety equipment and/or precautions; (b) to work in close proximity to lead paint or asbestos containing materials; or (c) work in close proximity to other Architect employees who are abating lead paint or asbestos, without proper safety equipment and/or safety precautions.

20. Working with or near, or remediating/abating lead paint and asbestos is inherently dangerous and poses a significant risk of serious physical injury or death. Consequently, any time an employee may be called to work with, in or near asbestos or lead paint it triggers the mandatory obligations listed in the Architect's

environmental hazard policy, referenced in paragraph 11, above.

21. The Architect, through its supervisors and managers, does not perform its mandatory duty of requesting "an evaluation of the proposed work, work site and working conditions by the Safety and Environmental Division (SED)," and consequently the Safety and Environmental Division does not perform any of the inspections, determinations or verifications it is required to undertake under the regulations.

22. Additionally, SED does not "develop a report containing findings and recommendations of whether work should be proceed as planned and how potential hazards should be mitigated." Nor does the Architect make determinations of whether "the work situation continue[s] to be hazardous," and thereafter "authorize payment of an environmental differential to employees who will be assigned to perform work."

23. Under the Defendant's policy, "Overtime Work" is "[w]ork that is performed by an employee in excess of 40 hours in an administrative workweek." *See* Exhibit 1, HRMD Manual, Chapter 532, p 3. An "administrative workweek" is "the period of 7 consecutive calendar days that coincide with the calendar week which commences on Sunday and ends on Saturday." *See id.* at p 4.

24. Plaintiff has performed "overtime work" as defined by the Defendant's policy on at least five occasions in the time between March 17, 2018 and the present, which time marks the period beginning 180 days prior to the date that Mr. Maynard filed his request for counseling at the Office of Congressional Workplace Rights.

25. Each time Mr. Maynard has worked overtime, he was tasked with working with or around lead paint or asbestos containing materials. On those occasions, Mr. Maynard

was ordered to either remediate the lead paint, or work in close proximity to other employees who were remediating lead paint, which gave rise to a significant risk of illness or injury due to exposure to hazardous materials that either was not, or could not be, practically eliminated by use of personal protective equipment or safety measures.

26. Additionally, during those overtime work hours Mr. Maynard was either ordered to remove/abate asbestos containing materials, to work in close proximity to asbestos containing materials or to work in close proximity to other employees who were removing/abating asbestos containing materials, which gave rise to a significant risk of illness or injury due to exposure to hazardous materials that either was not, or could not be, practically eliminated by use of personal protective equipment or safety measures.

27. According to the AOC's environmental hazard policy, Mr. Maynard was entitled to have his overtime pay calculated to include the environmental hazard premium of 8% for working with poisons and toxic materials, as referenced in ¶ 12, above.

28. At no time has the AOC included the environmental hazard pay premium of 8% in Plaintiff's regular rate of pay.

29. At no time has the AOC included the environmental hazard pay premium of 8% in the calculation of Mr. Maynard's overtime pay.

**COUNT I: ENTITLEMENT TO MANDAMUS OR AN ORDER COMPELLING RELIEF**

30. Plaintiff repeats and reavers each of the foregoing paragraphs as if they were specifically restated here.

31. Under Defendant's own regulations, prior to directing an employee to work in

conditions that may be hazardous, the AOC manager or supervisor must request an evaluation of the proposed work, work site and working conditions by the Safety and Environmental Division (SED).

32. SED is then required to (a) Verify the propriety and condition of all portable safety equipment; (b) Determine that employees who will perform the work have received any AOC- or OSHA-mandated training; (c) If required, verify that employees who will perform the work have received medical clearance to perform anticipated tasks; (d) Visit the work site to observe and analyze field conditions and determine whether the conditions are hazardous; (e) Review applicable AOC Safety Policies and OSHA regulations to validate findings and prepare a pre-work safety plan when required; and; (f) Develop a report containing findings and recommendations of whether work should be proceed as planned and how potential hazards should be mitigated.

33. If, despite SED's required verifications, determinations and recommendations, the work situation continue to be hazardous, then the AOC Manager or Supervisor is required to authorize payment of an environmental differential to employees who will be assigned to perform work.

34. In the event that environmental hazard pay is required by the AOC policy, the AOC Manager or Supervisor is required to document in writing the need for payment of an environmental differential, including (a) A description of the proposed work; (b) A description of the unusually severe working conditions or unusually severe hazards; (c) The name, position title, grade and organization of the employee(s) who will be performing the work; (d) An estimate of the amount of time required for each employee to carry out the work assignment(s); (e) A statement that SED was

consulted concerning the proposed work assignment and the date of SED's report of findings and recommendations; and (f) Upon completion of the work, the beginning and ending time of each employee's exposure to the unusually severe hazard, physical hardship or working condition will be annotated. A copy of that documentation is required to be filed with the timecard of each employee who performed the work.

35. On occasions where there is not sufficient lead time to follow the full safety processes outlined in paragraphs 9(e)(2) and (e)(3), referenced in ¶ 11 and ¶¶ 32-34, above, the Defendant's Managers and Supervisors are required to follow the following process: (1) The AOC Manager or Supervisor makes a telephone call to SED requesting an occupational safety and health review of the proposed work, work site and working conditions; (2) SED expedites their review of the proposed work, site and working conditions; (3) In consultation with SED, the AOC Manager or Supervisor ensures appropriate steps will be taken to address any health/safety issues raised; (4) The AOC Manager or Supervisor documents the need for environmental differential pay in writing, providing the information requested in 9(e)(3)( a)-( e), above; and (5) Upon completion of the work, the beginning and ending time of each employee's exposure to the unusually severe hazard, physical hardship or working condition will be annotated.

36. The requirements and duties found in Chapter 352 (9)(e) and (f) (Exhibit 1, HRMD Manual, p. 15-17) are mandatory and non-discretionary. Nevertheless, Plaintiff's managers and supervisors have never performed any of those required obligations, despite the fact that they regularly instruct him to remediate lead paint and assist in the abatement of asbestos containing materials.

37. Plaintiff has requested that the Defendant fulfill its mandatory, non-discretionary obligations, as described herein, but to no avail.  Specifically, Plaintiff requested that the Architect follow its regulations on environmental hazard pay on November 14, 2018, and on February 5, 2020 among possibly other occasions.

38. Because the Defendant's regulations impose mandatory, nondiscretionary obligations when it comes to assigning employees such as Plaintiff to work with environmental hazards, Defendant's refusal to comply with its own regulations entitles Plaintiff to an order in mandamus or, alternately pursuant to the Administrative Procedures Act (5 U.S.C. 706(1)) compelling the Architect to follow its mandatory obligations.

## COUNT II: WAGE THEFT

39. Plaintiff repeats and reavers each of the foregoing paragraphs as if they were specifically restated here.

40. Due to the fact that Plaintiff regularly works in close proximity to toxic substances (including asbestos and lead paint), Plaintiff is entitled to an environmental hazard differential pay of 8% to be included in his Base Rate of Pay, including when he works overtime.

41. Plaintiff has worked overtime, performing hazardous work involving close proximity to poisons and/or toxic materials or asbestos, on at least five occasions between March 17, 2018 and the present.

42. The Architect of the Capitol has never paid Plaintiff the environmental hazard pay to which he is entitled on either regular time or overtime.

43. Plaintiff is entitled to his lost wages because of the Architect's failure to pay him environmental hazard pay and liquidated damages under the Congressional

Accountability Act, as well as backpay – pursuant to 5 U.S.C. § 5596.

## COUNT III: DECLARATORY RELIEF AND BACKPAY

44. Plaintiff repeats and reavers each of the foregoing paragraphs as if they were specifically restated here.

45. Due to the fact that Plaintiff regularly works in close proximity to toxic substances (including asbestos and lead paint), Plaintiff is entitled to a Declaratory Judgment that he is entitled to the environmental hazard differential pay of 8% to be included in his Base Rate of Pay for all hours that he works on regular time, in addition to overtime.

46. The Architect of the Capitol has never paid Plaintiff the environmental hazard pay to which he is entitled on either regular time or overtime.

47. Plaintiff requests Declaratory Relief, pursuant to 28 U.S.C. § 2201, in the form of a judicial declaration that he is entitled to the 8% environmental hazard pay, as well as backpay, calculated back to March 17, 2018 – pursuant to 5 U.S.C. § 5596.

WHEREFORE, Plaintiff prays that this Court: (i) declare that the employment practices complained of in this Complaint are unlawful in that they violate the Congressional Accountability Act; (ii) compel the Defendant to comply with all of its regulations concerning ordering employees, including Plaintiff, to work in conditions that may be hazardous; (iii) to declare that Plaintiff is entitled to have his Base Rate of Pay calculated such that it includes the 8% differential; (iv) permanently enjoin the Defendant and its agents, officers and employees from engaging in all practices found by this Court to be in violation of the Congressional Accountability Act; (v) order the Defendant to make the Plaintiff whole by paying him any monetary and/or liquidated damages, including back pay, proved at trial in addition to

compensatory damages in an amount to be determined at trial; (vi) retain jurisdiction over this action to ensure full compliance with the Court's orders and require the Defendant to file such reports as the Court deems necessary to evaluate such compliance; (vii) order the Defendant to pay Plaintiff's costs and expenses and reasonable attorneys' fees in connection with this action; and (viii) grant such other and further relief to the Plaintiff as the Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

Respectfully Submitted,
ALDERMAN, DEVORSETZ & HORA, PLLC

Leslie D. Alderman III (D.C. # 477750)
1025 Connecticut Ave., NW
Suite 615
Washington, DC 20036
Tel: 202-969-8220
Fax: 202-969-8224
lalderman@adhlawfirm.com
Attorney for the Plaintiff