## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

———————————————————————

SHIRLON MAYNARD,           )
                                  )
             Plaintiff,       )
                                  )
      v.                     )       Civil Action No. 19-258 (RBW)
                                  )
ARCHITECT OF THE CAPITOL,   )
                                  )
             Defendant.    )
———————————————————————

## **MEMORANDUM OPINION**

The plaintiff, Shirlon Maynard, brings this action against the defendant, the Architect of the Capitol, alleging violations of the Congressional Accountability Act of 1995 (the "Accountability Act"), 2 U.S.C. §§ 1301–1438; the Mandamus Act, 28 U.S.C. § 1361; the Administrative Procedures Act ("APA"), 5 U.S.C. § 701–706; the Back Pay Act, 5 U.S.C. § 5596; and the Declaratory Judgment Act, 28 U.S.C. § 2201.  See Amended Complaint ("Am. Compl.") ¶¶ 1–2, ECF No. 23.  Currently pending before the Court is the defendant's motion to dismiss.  See generally Defendant's Motion to Dismiss Plaintiff's Amended Complaint ("Def.'s Mot." or the "defendant's motion"), ECF No. 24.  Upon careful consideration of the parties' submissions and the entire record in this case,[1] the Court concludes for the following reasons that it must grant the defendant's motion.

---

[1] In addition to the filings already identified, the Court considered the following submissions and accompanying exhibits in rendering its decision: (1) the Defendant's Memorandum in Support of Motion to Dismiss ("Def.'s Mem."), ECF No. 24-1; (2) the plaintiff's opposition to the defendant's motion to dismiss, which was submitted without a title ("Pl.'s Opp'n"), see ECF No. 26; (3) the Defendant's Reply in Support of Motion to Dismiss ("Def.'s Reply"), ECF No. 27; (4) the Defendant's Supplemental Briefing in Support of [ ] Motion to Dismiss ("Def.'s Suppl. Br."), ECF No. 29; and (5) the Plaintiff's Supplemental Brief in Opposition to [ ] Motion to Dismiss ("Pl.'s Suppl. Br."), ECF No. 30.

# I.   BACKGROUND

## A.   The Plaintiff's Employment

The following allegations are taken from the plaintiff's Amended Complaint, see generally Am. Compl., unless stated otherwise.  The "[p]laintiff is currently employed as a [p]laster [l]eader" by the defendant.  Id. ¶ 18.  According to the plaintiff, as part of his job, he is required to "abate lead paint or asbestos[-]containing materials[] without proper safety equipment and/or precautions;" "work in close proximity to lead paint or asbestos[-]containing materials;" and "work in close proximity to other [ ] employees [of the defendant] who are abating lead paint or asbestos, without proper safety equipment and/or safety precautions."  Id. ¶ 19.  "[O]n at least five occasions . . . between March 17, 2018[,]" and May 29, 2020, the plaintiff "performed overtime work" that involved "working with or around lead paint or asbestos[-]containing materials[,]" including "remediat[ing] the lead paint, or work[ing] in close proximity to other employees who were remediating lead paint[,]" id. ¶ 25; "remov[ing or ]abat[ing] asbestos[-]containing materials[,]" id. ¶ 26; "work[ing] in close proximity to asbestos[-]containing materials[,]" id.; or "work[ing] in close proximity to other employees who were removing[ or ]abating asbestos[-]containing materials," id.

According to the plaintiff, this "inherently dangerous" work "triggers [ ] mandatory obligations listed in the [defendant's] environmental hazard policy," id. ¶ 20; however, the defendant does not follow these obligations, id. ¶¶ 21–22.  These "mandatory obligations" include (1) "requesting an evaluation of the proposed work, work site[,] and working conditions by the Safety and Environmental Division[,]" id. ¶ 21 (internal quotation marks omitted); (2) "mak[ing] determinations [as to] whether the work situation continue[s] to be hazardous[,]" id. ¶ 22; and (3) "authoriz[ing] payment of an environmental differential to employees who will be

assigned to perform [hazardous] work[,]" id. ¶ 22 (internal quotation marks omitted and second and third alterations in original).

**B.    This Case**

On January 30, 2019, the plaintiff filed his original Complaint in this case, see Complaint at 1, ECF No. 1, which he amended on May 29, 2020, see Am. Compl. at 1.  The plaintiff alleges in his Amended Complaint that (1) the "[d]efendant's refusal to comply with its own regulations [regarding environmental hazards] entitles [the p]laintiff to an order in mandamus or, alternately[,] pursuant to the [APA] compelling the [defendant] to follow its mandatory obligations" ("Count I"), id. ¶ 38; (2) he "is entitled to his lost wages because of the [defendant's] failure to pay him environmental hazard pay . . .  under the [ ] Accountability Act" ("Count II"), id. ¶ 43; and (3) he "is entitled to a [d]eclaratory [j]udgment that he is entitled to the environmental hazard differential pay of [eight percent] to be included in his ['regular rate'] of pay for all hours that he works on regular time, in addition to overtime[,] . . . as well as backpay" ("Count III"), id. ¶¶ 45, 47.

On June 26, 2020, the defendant filed its motion to dismiss, see Def.'s Mot. at 1, which the plaintiff opposed, see Pl.'s Opp'n at 1.[2]  Following a hearing before the Court, the Court ordered the parties to file supplemental briefing regarding "(1) whether a requirement exists that an employee of the defendant pursue the defendant's grievance process in order for environmental hazard pay to [be] included in his or her regular rate of pay; and (2) how the regular rate of pay of an employee of the defendant is determined."  Order at 1 (Feb. 26, 2021), ECF No. 28.  Thereafter, the parties filed their supplemental briefs.  See generally Def.'s Suppl. Br.; Pl.'s Suppl. Br.

---

[2] Because the plaintiff's opposition does not contain page numbers, the page numbers cited by the Court when referring to this filing are the page numbers automatically generated by the Court's ECF system.

## II.      STANDARD OF REVIEW

Federal district courts are courts of limited jurisdiction, Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994), and therefore, "[a] motion for dismissal under [Federal Rule of Civil Procedure] 12(b)(1) 'presents a threshold challenge to the [C]ourt's jurisdiction[.]'" Morrow v. United States, 723 F. Supp. 2d 71, 75 (D.D.C. 2010) (Walton, J.) (quoting Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987)). Thus, the Court is obligated to dismiss a claim if it "lack[s] [ ] subject[-]matter jurisdiction[.]" Fed. R. Civ. P. 12(b)(1). And, because "it is to be presumed that a cause lies outside [ ] [the Court's] limited jurisdiction," Kokkonen, 511 U.S. at 377, "the plaintiff bears the burden of pro[ving]" that the Court has jurisdiction over the plaintiff's claims, Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992).

In deciding a motion to dismiss based upon lack of subject-matter jurisdiction, the Court "need not limit itself to the allegations of the complaint." Grand Lodge of the Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 14 (D.D.C. 2001). Rather, the "[C]ourt may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case." Scolaro v. D.C. Bd. of Elections & Ethics, 104 F. Supp. 2d 18, 22 (D.D.C. 2000); see also Jerome Stevens Pharms., Inc. v. Food & Drug Admin., 402 F.3d 1249, 1253 (D.C. Cir. 2005). Additionally, the Court must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting [the] plaintiff the benefit of all inferences that can be derived from the facts alleged[.]'" Am. Nat'l Ins. Co. v. Fed. Deposit Ins. Corp., 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting Thomas v. Principi, 394 F.3d 970, 972 (D.C. Cir. 2005)). However, "the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for

failure to state a claim." <u>Grand Lodge</u>, 185 F. Supp. 2d at 13–14 (alterations in original) (internal quotation marks omitted).

### III.    ANALYSIS

The defendant moves to dismiss the plaintiff's Amended Complaint for lack of subject-matter jurisdiction.  Specifically, the defendant moves to dismiss Counts II and III of the Amended Complaint because (1) "[t]he United States has not waived sovereign immunity as to the [defendant's] administration of its policies regarding application of environmental differential pay" and therefore the Court lacks "jurisdiction to determine whether the [eight percent] environmental differential should have been included in the regular rate used to calculate any overtime that might have been owed to [the p]laintiff[;]" and (2) "the Court does not have jurisdiction under any other law, including the [Declaratory Judgment Act or the] Back Pay Act, to grant the declaratory relief sought in Count III[.]"  Def.'s Mem. at 3–4.  The defendant also moves to dismiss Count I of the Amended Complaint for lack of subject[-]matter jurisdiction "because the [APA] does not apply to the [l]egislative [b]ranch, and because [t]he plaintiff has not found [a] waiver of sovereign immunity with respect to his request [pursuant to the Mandamus Act] that th[e] Court review [the d]efendant's decision not to provide him with environmental differential pay[.]"  Id. at 4.  In response, the plaintiff argues that the Court has jurisdiction over all three counts.  See Pl.'s Opp'n at 1.  The Court will address each count in turn, beginning with Count II.

### A.    Count II

In Count II of his Amended Complaint, the plaintiff alleges that the defendant violated the Accountability Act by failing to pay him environmental hazard pay as part of his regular and overtime wages.  See Am. Compl. ¶¶ 39–43.  The defendant seeks to dismiss this count on the

grounds that the Court lacks subject-matter jurisdiction, arguing that "the United States has not waived sovereign immunity through the [Accountability Act] as to the [defendant's] determination of the applicability of environmental differential pay."  Def.'s Mem. at 4.  The plaintiff responds that "[a] determination that [he] is entitled to [ ] environmental hazard pay is well within this Court's authority under the [Accountability Act]."  Pl.'s Opp'n at 6.  For the following reasons, the Court agrees with the defendant.

A court's "obligation to assure [itself that it has] jurisdiction extends to sovereign immunity because it is jurisdictional[.]"  Perry Cap. LLC v. Mnuchin, 864 F.3d 591, 621 (D.C. Cir. 2017) (citation omitted).[3]  "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."  Anderson v. Carter, 802 F.3d 4, 8 (D.C. Cir. 2015) (quoting United States v. Mitchell, 463 U.S. 206, 212 (1983)).  Moreover, a court is obligated to "strictly construe[]" a waiver of sovereign immunity "in favor of the sovereign."  Lane v. Pena, 518 U.S. 187, 192 (1996).  Accordingly, "[a] waiver of the [f]ederal [g]overnment's sovereign immunity must be unequivocally expressed in statutory text, and will not be implied[.]"  Id. (citation omitted).

---

[3] The plaintiff argues that the defendant is actually presenting an argument under Federal Rule of Civil Procedure 12(b)(6), rather than Rule 12(b)(1), because the defendant "is plainly arguing that [the plaintiff] cannot state a cognizable claim under the [Accountability Act] for unpaid overtime wages, as calculated to include environmental hazard pay[,] because another law[—the Architect of the Capitol Human Resources Act, 2 U.S.C. § 1831 ("the Architect HR Act")—]governs the [defendant's] personnel-related policies[.]"  Pl.'s Opp'n at 4.  Therefore, the plaintiff argues, the "[d]efendant's argument should [ ] be considered under the 'failure to state a claim on which relief can be granted' standard found in Rule 12(b)(6)."  Id.  Moreover, the plaintiff argues, the "[d]efendant has now twice used [the] incorrect position [that it is moving under Rule 12(b)(1)] to insert its motions to dismiss in untimely fashion in light of the fact that a motion to dismiss pursuant to Rule 12(b)(1) can be raised at any time."  Id. at 3 (footnote omitted).  The Court disagrees, because as the defendant correctly notes in its reply, see Def.'s Reply at 5 n.4, 6 n.5, its argument concerns whether the defendant, as part of the United States, has waived its sovereign immunity from the plaintiff's claims, see Def.'s Mem. at 4–5.  And, the Court has an "obligation to assure [itself that it has] jurisdiction[,]" and this obligation "extends to sovereign immunity because it is jurisdictional[.]"  Perry Cap. LLC v. Mnuchin, 864 F.3d 591, 621 (D.C. Cir. 2017).  Accordingly, the defendant is permitted to bring its motion seeking dismissal for lack of subject-matter jurisdiction at any time.  See Fed. R. Civ. P. 12(h)(3) (stating that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action" (emphasis added)).

1. **Whether the Enactment of the Accountability Act Constitutes a Waiver of Sovereign Immunity as to Count II**

The parties dispute whether the enactment of the Accountability Act constitutes a waiver of sovereign immunity as to Count II.  See Def.'s Mem. at 10 (arguing that "neither the [Accountability Act] nor any other law has waived sovereign immunity to allow review of the [defendant's] application of th[e environmental hazard pay] policy"); Pl.'s Opp'n at 6 (arguing that "a claim that the [defendant] failed to pay [the p]laintiff overtime wages at the appropriate 'regular rate' . . . is cognizable under the [Accountability Act]").

The Accountability Act "confers on [legislative] employees rights and remedies drawn from various labor and employment statutes not previously applicable to the legislative branch[,]" Fields v. Off. of Eddie Bernice Johnson, 459 F.3d 1, 5 (D.C. Cir. 2006), including "certain provisions of the Fair Labor Standards Act" ("FLSA"), id. at 46 n.25.  See 2 U.S.C. § 1313(a)(1) (applying by reference "subsections (a)(1) and (d) of [§] 6, [§] 7, and [§] 12(c) of the [FLSA]").  These FLSA provisions (1) mandate a minimum wage of "$7.25 an hour," 29 U.S.C. § 206(a)(1)(C); (2) prohibit sex discrimination, see id. § 206(d); (3) require compensation "for a workweek longer than forty hours . . . at a rate not less than [1.5] times the regular rate at which [the employee] is employed[,]" id. § 207(a)(1); and (4) prohibit "oppressive child labor[,]" id. § 212(c).  Moreover, these rights are enforceable in federal district courts.  See 2 U.S.C. § 1408(a) (providing that "[t]he district courts of the United States shall have jurisdiction over any civil action commenced under [§] 1401 of this title and this section by a covered employee").  Therefore, as to these four specific areas, the Accountability Act represents a limited waiver of the defendant's sovereign immunity as part of the legislative branch.

Because the Accountability Act does not explicitly waive sovereign immunity regarding claims of entitlement to environmental hazard pay,[4] the plaintiff argues that Count II falls under the Accountability Act's incorporation of 29 U.S.C. § 207(a)(1), which mandates compensation "for a workweek longer than forty hours . . . at a rate not less than [1.5] times the regular rate at which [the employee] is employed[,]" 29 U.S.C. § 207(a)(1); see Pl.'s Opp'n at 5–7.  In Count II, the plaintiff alleges that the defendant "has failed to change [his 'regular rate' of pay[5] to include the [eight percent] environmental hazard pay premium to which he is entitled, and the defendant has therefore failed to pay him the appropriate hourly rate, including when he works overtime, in

---

[4] As the defendant correctly notes, see Def.'s Mem. at 4, the Accountability Act itself does not explicitly address environmental hazard pay, see 2 U.S.C. §§ 1301–1438, and none of the subsections of the FLSA that are incorporated in the Accountability Act explicitly require the payment of environmental hazard pay, see 29 U.S.C. §§ 206(a)(1) and (d), 207, 212(c).  Therefore, because "waiver[s] of the [f]ederal [g]overnment's sovereign immunity must be unequivocally expressed in statutory text," Lane, 518 U.S. at 192, the Accountability Act cannot operate as a waiver of sovereign immunity over a claim, like Count II, regarding an alleged entitlement to environmental hazard pay.

Rather, for employees of the defendant, like the plaintiff, the applicability of environmental hazard pay is determined by the defendant's "Human Resources Management Manual Chapter 532, Pay Under the Architect's Wage System" ("the defendant's pay policy").  See Pl.'s Opp'n, Exhibit ("Ex.") 2 (Order of the Architect of the Capitol (Mar. 1, 2005) ("Def.'s Pay Pol'y")); Pl.'s Opp'n at 8 (arguing that the defendant's pay policy "define[s] an employee's ['regular rate' of pay] as 'the scheduled rate of pay plus any applicable night[-]shift or environmental differential'").  However, the Supreme Court has clearly held that "[a] waiver of the [f]ederal [g]overnment's sovereign immunity must be unequivocally expressed in statutory text[.]" Lane, 518 U.S. at 192 (emphasis added).  Therefore, the defendant's internal pay policy does not constitute a waiver of sovereign immunity because it is not an "unequivocal[] . . . statutory text" intended to waive sovereign immunity.  Id.

Moreover, the Architect of the Capitol Human Resources Act (the "Architect HR Act"), 2 U.S.C. § 1831(c)(1), which directs the defendant to establish its pay policy, also does not waive sovereign immunity over claims regarding environmental hazard pay.  The Architect HR Act requires the defendant to "establish and maintain a personnel management system[.]" 2 U.S.C. § 1831(c)(1).  However, as the defendant correctly argues, see Def.'s Mem. at 9–10, the Architect HR Act itself does not mandate the payment of environmental hazard pay, and, furthermore, contains no waiver of sovereign immunity permitting legislative employees to pursue claims in court for alleged violations of the Architect HR Act—or any part of the "personnel management system" established in accordance with the Architect HR Act, including the defendant's pay policy, see 2 U.S.C. § 1831(c)(1).  In sum, no explicit statutory waiver of sovereign immunity exists in either the Accountability Act, the FLSA, the defendant's pay policy, or the Architect HR Act, that permits the Court "to review the [defendant's] application of its [own pay] polic[y] regarding when environmental differential pay is due to workers[,]" Def.'s Mem. at 5.

[5] The parties use inconsistent terminology in referring to the amount of pay that the plaintiff received while working his regular hours.  See, e.g., Def.'s Mem. at 3 (the plaintiff's "regular rate"); Def.'s Suppl. Br. at 5 (the plaintiff's "basic rate of pay"); id., Ex. 6 (Declaration of Tanisha Gordon ("Gordon Decl.")) ¶ 3 (the plaintiff's "basic pay"); Am. Compl. ¶ 9 (the plaintiff's "[r]ate of [b]asic [p]ay").  For ease of reference, the Court will refer to the rate at which the plaintiff was paid when not working overtime as his "regular rate" of pay, in accordance with the statutory language in 29 U.S.C. § 207(a)(1).

violation of the [ ] Accountability Act."  Am. Compl. at 2; see also id. ¶¶ 39–43 (alleging that the plaintiff (1) "regularly works in close proximity to toxic substances" and therefore "is entitled to an environmental hazard differential pay of [eight percent] to be included in his ['regular r]ate['] of [p]ay, including when he works overtime[;]" (2) "worked overtime, performing hazardous work[;]" and (3) was never paid "the environmental hazard pay to which he [was] entitled on either regular time or overtime").  According to the plaintiff, because the Accountability Act permits a plaintiff to sue for a failure to pay an employee overtime wages at a minimum of 1.5 times the employee's "regular rate" of pay, "[i]t seems, therefore[,] an elementary matter that in the course of enforcing [the p]laintiff's right to receive overtime calculated at 1.5 times the [p]laintiff's [']regular rate[']" of pay, "the Court is free to examine and declare what the 'regular rate['] of pay[] should be so that the [p]laintiff may be paid the appropriate rate."  Pl.'s Opp'n at 6.  The Court disagrees.

Because "[a] waiver of the [f]ederal [g]overnment's sovereign immunity must be unequivocally expressed in statutory text, and will not be implied[,]" Lane, 518 U.S. at 192 (citation omitted), the Court begins its analysis with the applicable statutory text.  The Accountability Act states that "[t]he rights and protections established by . . . [§] 7 . . . of the [FLSA,]" 2 U.S.C. § 1313(a)(1)—which mandates compensation "for a workweek longer than forty hours . . . at a rate not less than [1.5] times the regular rate at which [the employee] is employed[,]" 29 U.S.C. § 207(a)(1)—"shall apply to covered employees[,]" 2 U.S.C. § 1313(a)(1).  Therefore, under the Accountability Act, a court has jurisdiction to review whether, "for a workweek longer than forty hours[,]" a legislative employee was paid "at a rate not less than [1.5] times the regular rate at which [he or she] is employed."  29 U.S.C. § 207(a)(1).  When "strictly construed," Lane, 518 U.S. at 192, this waiver applies only to

questions regarding the difference in the rate of pay between a plaintiff's "regular rate" of pay and his or her overtime rate of pay.

Here, as the defendant correctly argues, see Def.'s Mem. at 4–5 (arguing that "[alt]hough [the p]laintiff has attempted to dress his claims up as being ones for unpaid overtime, he is actually asking this Court to review the regular rate upon which any applicable overtime would be calculated"), Count II concerns whether the defendant appropriately withheld environmental differential pay from the plaintiff's "regular rate" of pay, see Am. Compl. ¶ 40 ("[d]ue to the fact that [the p]laintiff regularly works in close proximity to toxic substances . . . , [he] was entitled to an environmental hazard differential pay of [eight percent] to be included in his ['regular rate'] of [p]ay, including when he works overtime"); id. ¶ 42 (alleging that the defendant "never paid [the p]laintiff the environmental hazard pay to which he was entitled on either regular time or overtime").  Contrary to the plaintiff's arguments, see Pl.'s Opp'n at 5 (describing Count II as the "[p]laintiff's claim for incorrectly calculated overtime"), Count II does not concern whether the plaintiff's overtime pay was 1.5 times the "regular rate" of pay that he received.  See Am. Compl. ¶¶ 39–43.  Accordingly, the Court's review of Count II would amount to review of "whether the [plaintiff] is entitled to hazard pay in the first instance[,]" Pl.'s Opp'n at 8—a question that asks whether the plaintiff's "regular rate" of pay was correct based on the defendant's pay policy.[6]  But, as discussed above, see supra note 4, at 8, the defendant's pay policy cannot waive sovereign immunity, and accordingly, there is no statutory waiver of

---

[6] The plaintiff makes no argument that any other source apart from the defendant's pay policy entitles him to environmental hazard pay.  See, e.g., Pl.'s Opp'n at 6 (arguing that the defendant "has established a policy that allows for environmental [hazard] pay to be paid to its employees under appropriate circumstances" and that "the [defendant's pay policy] define[s] an employee's 'Rate of Basic Pay' as 'the scheduled rate of pay plus any applicable night shift or environmental differential'").

sovereign immunity over claims stemming from the defendant's pay policy.[7]  The mere fact that

a plaintiff would have to establish facts regarding the amount of his or her "regular rate" of pay

does not mean that the Court is permitted to sweep into its analysis any internal policies or legal

issues for which a waiver of sovereign immunity is not "unequivocally expressed" in the

statutory text, Lane, 518 U.S. at 192.  Accordingly, the Court concludes that sovereign immunity

of the claim asserted in Count II has not been waived, and the Court therefore lacks jurisdiction

over this claim.

## 2.   The Plaintiff's Counter-Arguments

In response to the defendant's arguments, the plaintiff raises several counter-arguments.[8]

First, he argues that the defendant's "position would create an impossible, circular argument"

---

[7] There is no dispute between the parties that "if [the p]laintiff had received environmental differential pay, it would have been included in his ['regular] rate['] of pay, and [any] failure by the [d]efendant to include it in its overtime calculation would be in violation of [the] FLSA." Def.'s Suppl. Br. at 6.  However, the plaintiff alleges that the defendant "never paid [him] the environmental hazard pay to which he was entitled on either regular time or overtime." Am. Compl. ¶ 42.  Therefore, the fact that this Court would be able to hear the plaintiff's claim that he did not receive the correct amount of overtime pay if he had received environmental differential pay as part of his "regular rate" of pay does not conflict with the Court's conclusion that it lacks jurisdiction over this case as alleged by the plaintiff.

[8] In addition to the arguments discussed below, the plaintiff cites two authorities for his argument that "[a] determination that [he] is entitled to [ ] environmental hazard pay is well within this Court's authority under the [Accountability Act,]" Pl.'s Opp'n at 6.  First, he argues that the Court has jurisdiction over this question because "questions ancillary to, or growing out of, the main action . . . may be taken cognizance of by the [C]ourt and determined, since such jurisdiction is in aid of its authority over the principal matter[.]" Id. at 10 (first alteration in original) (quoting Am. Iron & Steel Inst. v. Envtl. Prot. Agency, 115 F.3d 979, 986 (D.C. Cir. 1997)).  In American Iron & Steel Institute, the District of Columbia Circuit held that it had ancillary jurisdiction to include parts of an agency regulation, the Final Water Quality Guidance for the Great Lakes System, 60 Fed. Reg. 15,366 (Mar. 23, 1995), that were otherwise not within the Circuit's direct jurisdiction because "[t]he magnitude and technical character of the record . . . strongly militates against splitting the case into pieces[,]" "[t]he interest in assuring a forum capable of treating the case coherently might justify the comparatively modest displacement of the district court[,]" and "national uniformity, an important goal in dealing with broad regulations, is best served by initial review in a court of appeals." Id. (citations, internal quotation marks, and alternations omitted).  Accordingly, the Circuit concluded that "[s]ince most of the case is within [its] direct jurisdiction, [it could] properly assert ancillary jurisdiction over the remainder." Id.

None of the Circuit's reasons in American Iron & Steel Institute are applicable to this case, however.  First, the jurisdictional issues presented here do not concern whether to "split[] the case into pieces[,]" id., because the question is whether any court—including this Court—would have jurisdiction over Count II, not whether initial review is proper in a Court of Appeals, or even whether another court should address part of Count II.  See Morrow v. District of Columbia, 417 F.2d 728, 738 (D.C. Cir. 1969) (noting that, if ancillary jurisdiction did not

(continued . . .)

whereby "[n]o court could ever determine an employee's challenge over whether or not he is

being paid 1.5 times his appropriate 'regular rate' of pay" when working overtime because courts

could not evaluate "what elements are required . . . to be included in [that employee's ']regular

rate['] of pay."  Pl.'s Opp'n at 8.  This is incorrect, but this reality has no bearing on the Court's

ruling.  The Court would have jurisdiction to review a claim that the Accountability Act

exempted from the protection of sovereign immunity—namely, a claim that the employee was

not paid at least 1.5 times his or her "regular rate" of pay when working overtime.  For example,

if a hypothetical plaintiff earned fifteen dollars per hour as his or her "regular rate" of pay, then a

court is authorized to review whether he or she earned at least 1.5 times that amount when

working overtime.  However, a court would not have jurisdiction to review claims challenging

the validity of his or her fifteen-dollar-per-hour "regular rate" of pay under any authority for

---

(. . . continued)

exist, "parties would be forced to go to different courts to obtain complete relief").  Moreover, as discussed above, "most of" Count II does not fall "within [the Court's direct jurisdiction[,]" Am. Iron & Steel Inst., 115 F.3d at 986, because Count II concerns whether the plaintiff's "regular rate" of pay was correct according to the defendant's pay policy, not to whether the plaintiff's overtime pay was at least 1.5 times the "regular rate" of the pay that he received.  Therefore, "most of[,]" id., Count II does not relate to the question over which this Court would have jurisdiction, i.e., the difference in rates between the plaintiff's overtime and regular pay.  Finally—and most importantly—the plaintiff does not cite, and the Court is unable to find, any case holding that ancillary jurisdiction may be used to extend the Court's jurisdiction to include a claim for which the government has not waived its sovereign immunity.  See generally Pl.'s Opp'n.  Accordingly, the plaintiff's reliance on American Iron & Steel is misplaced.

Second, in his supplemental brief, the plaintiff argues for the first time that "the broad remedial intent of the FLSA" grants the Court "authority and jurisdiction" to determine "whether [he] is entitled to environmental differential pay to be included in his ['regular] rate['] of pay . . . in the course of deciding [his] [ ] claim[ under the Accountability Act]."  Pl.'s Suppl. Br. at 7.  The plaintiff cites Rhea Lana, Inc. v. United States Department of Labor, 271 F. Supp. 3d 284 (D.D.C. 2017), for the proposition that "Congress intended for [the] FLSA's protections to be interpreted broadly in favor of workers' rights[,]" id. at 289.  However, he fails to note that this quotation summarized an argument made by a party in that case and was not a statement—let alone a holding—of the court.  See id. ("[T]he [defendant] Department [of Labor] points to the following factors that support its [ ] determination [that the plaintiff's volunteers qualified as employees under the FLSA]: . . . Congress intended for [the] FLSA's protections to be interpreted broadly in favor of workers' rights.").  Even assuming that the Court agreed with the Department of Labor's argument in that case, a broad interpretation of workers' rights under the FLSA would pertain to questions on the merits, rather than the preliminary, jurisdictional question of whether the United States has waived sovereign immunity regarding this issue.  Any obligation to construe rights under the FLSA broadly cannot nullify the Court's obligation to "strictly construe[]" a waiver of sovereign immunity "in favor of the sovereign."  Lane, 518 U.S. at 192.

which there is not a clear waiver of sovereign immunity.  See Lane, 518 U.S. at 192 (noting that "[a] waiver of the [f]ederal [g]overnment's sovereign immunity must be unequivocally expressed in statutory text").

Second, the plaintiff argues that the defendant's construction of the Accountability Act would permit the defendant to "simply flout the overtime pay requirements of the [Accountability Act.]"  Pl.'s Opp'n at 8.  To illustrate, the plaintiff provides two hypotheticals: (1) "the [defendant] could attempt to reduce its overtime expenses by calculating all GS-13 employees' overtime wages based on a GS-9 rate of pay[,]" and (2) "the [defendant] could exclude night[-]shift differential payments from all employees' overtime calculations."  Id. However, neither hypothetical supports the plaintiff's argument because, in both hypothetical situations, the defendant would not be calculating overtime payments based on the employee's "regular rate" of pay.  To illustrate, in the first hypothetical, the GS-13 employee's "regular rate" of pay would be at a GS-13 level.  Accordingly, if the employee only received overtime payments at 1.5 times the GS-9 rate, the employee would not have received overtime at 1.5 times his or her "regular rate."  Therefore, a court would have jurisdiction to consider a claim that the employee's overtime pay was not 1.5 times of his or her "regular rate" of pay.  Similarly, in the second hypothetical, if an employee received night-shift differential payments as part of his or her "regular rate" of pay, but did not receive night-shift differential payments as part of his or her overtime pay, then his or her overtime pay would not be 1.5 times of his or her "regular rate" of pay.  Accordingly, a court would be able to review a claim under the Accountability Act alleging that the employee's overtime pay did not reflect 1.5 times his or her "regular rate" of pay.

Therefore, neither hypothetical supports the plaintiff's argument that the Court has jurisdiction over Count II.[9]

The Court is not unsympathetic to the plaintiff's concerns regarding his inability to obtain judicial review over claims as asserted in Count III, however, this unfortunate result does not mitigate the Court's obligation to strictly construe waivers of sovereign immunity.[10] Accordingly, because "the sole basis alleged for [Count II] is the [defendant's] alleged failure to include the [eight percent] environmental differential in the [']regular rate['] upon which any overtime owed to [the p]laintiff must be calculated" and the plaintiff has "not otherwise alleged that he was not paid 1.5 times his [']regular rate['] for hours [ ] worked in excess of forty hours in any given week[,]" Def.'s Reply at 3–4, the Court concludes that it does not have subject-matter jurisdiction over Count II.  The Court must therefore dismiss Count II of the plaintiff's Amended Complaint for lack of jurisdiction.[11]

---

[9] The plaintiff also cites two cases where district courts that were not addressing the question of jurisdiction held that similar claims regarding inaccurate "regular rates" of pay presented as overtime claims under the FLSA were barred by collective bargaining agreements.  See Pl.'s Opp'n at 9–10 (discussing Hoops v. Keyspan Energy, 822 F. Supp. 2d 301, 307 (E.D.N.Y. 2011), and Elswick v. Daniels Elec., Inc., 787 F. Supp. 2d 443 (S.D. W. Va. 2011)).  However, as the defendant correctly notes in its reply, "[b]oth of these non-controlling cases involved defendants that were private entities, not subdivisions of the United States [g]overnment[,]" Def.'s Reply at 8 n.7.  Therefore, these cases have nothing to do with whether the United States has waived subject-matter jurisdiction over applications of the defendant's pay policy.

[10] As the defendant aptly notes in its supplemental brief, see Def.'s Suppl. Br. at 5–6, although "the United States has not waived sovereign immunity for a federal court to review the [defendant's] application of [its p]ay [p]olicy," id. at 5, there are administrative avenues available to the plaintiff, and other employees of the defendant, to pursue claims that the defendant has improperly applied its own pay policy, including a grievance procedure, see generally id., Ex. 1 (Architect of the Capitol, Human Resources Manual, Ch. 771, Grievances).  In a declaration provided by the defendant, Assistant Superintendent Ryan Columbo attests that "employees have used the [defendant's g]rievance [p]olicy to grieve all manner of concerns relating to their employment, including concerns relating to letters of counseling or reprimands, disagreement with their direct supervisors on issues such as management style or decisions that affect assignments, and pay issues[,]" id., Ex. 2 (Declaration of Ryan Columbo ("Columbo Decl.")) ¶ 2, including an "issue regarding the miscalculation of certain employees' Sunday differential pay[,]" id., Ex. 2 (Columbo Decl.) ¶ 3.

[11] The plaintiff argues that the "[d]efendant has [ ] conceded that 'the FLSA is silent regarding the subject of hazard pay, except to require that it be included as part of a federal employee's [']regular rate['] of pay in computing the employee's overtime pay[.]'"  Pl.'s Opp'n at 6 (emphasis omitted) (quoting Defendant's Motion for Judgment on the Pleadings at 7, ECF No. 13).  However, "parties may not waive or concede a federal court's subject[-]matter

(continued . . .)

B.      **Count III**

The Court next turns to the defendant's challenge to Count III of the Amended Complaint.  In Count III, the plaintiff alleges that "[d]ue to the fact that [he] regularly worked in close proximity to toxic substances . . . , [he] is entitled to a [d]eclaratory [j]udgment" pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, "that he was entitled to the environmental hazard differential pay of [eight percent] to be included in his ['regular rate'] of [p]ay for all hours that he work[ed] on regular time, in addition to overtime[,]" Am. Compl. ¶ 45, and "to backpay . . . pursuant to [the Back Pay Act,] 5 U.S.C. § 5596[,]" id. ¶ 47.  Like its challenge to Count II, the defendant seeks to dismiss Count III because "th[e] Court does not have jurisdiction to provide [a] remedy" under either the Declaratory Judgment Act or the Back Pay Act.  Def.'s Mem. at 13.  For the following reasons, the Court concludes that there has been no waiver of sovereign immunity as to the allegations asserted in Count III.

1.  **The Declaratory Judgment Act**

The plaintiff first argues that, "even if the Court did not have full authority[] under the [ ] Accountability Act," Pl.'s Opp'n at 9, to determine whether the defendant's pay policy entitles him to environmental hazard pay, "the Declaratory Judgment Act gives this Court the authority to 'declare the rights and other legal relations' of [the plaintiff] with respect to his entitlement to environmental hazard pay[,]" id. (quoting 28 U.S.C. § 2201); see 28 U.S.C. § 2201(a) ("In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.").  However, the

---

(. . . continued)
jurisdiction." Gardner v. United States, 211 F.3d 1305, 1310 (D.C. Cir. 2000).  Therefore, the defendant's statement in its earlier memorandum not only fails to comport with the legal authority the Court is required to follow, but also does not impact the Court's determination regarding the defendant's arguments in its motion to dismiss.

Court agrees with several of its colleagues that "the Declaratory Judgment Act does not provide

a waiver of sovereign immunity." Stone v. Dep't of Hous. & Urb. Dev., 859 F. Supp. 2d 59, 64

(D.D.C. 2012) (citing Walton v. Fed. Bureau of Prisons, 533 F. Supp. 2d 107, 114 (D.C. Cir.

2008)).  Therefore, because there has been no waiver of sovereign immunity over the question of

whether the defendant's pay policy entitles the plaintiff to environmental hazard pay, the

Declaratory Judgment Act does not confer to the Court jurisdiction over Count III.

**2.   The Back Pay Act**

The plaintiff next argues that "[b]y the plain language of the Back Pay Act, it applies to

[his] claim that he was not paid at 1.5 times his [']regular rate['] of pay for the overtime that he

worked."  Pl.'s Opp'n at 11.  The Back Pay Act entitles back pay to

> [a]n employee of an agency who, on the basis of a timely appeal or an
> administrative determination . . . is found by appropriate authority under
> applicable law, rule, regulation, or collective bargaining agreement, to have
> been affected by an unjustified or unwarranted personnel action which has resulted in
> the withdrawal or reduction of all or part of the pay, allowances, or differentials of
> the employee[.]

5 U.S.C. § 5596(b)(1).  However, as discussed above, see supra note 4, at 8, the plaintiff's only

alleged entitlement to environmental hazard pay stems from the defendant's pay policy, which is

not a "law, rule, regulation, or collective bargaining agreement[.]"  Id.  Therefore, absent a

waiver of sovereign immunity regarding the underlying claim for which the plaintiff seeks back

pay pursuant to the Back Pay Act—namely, the application of the defendant's pay policy—the

Back Pay Act itself does not provide the requisite clear and unambiguous waiver of sovereign

immunity.[12]  See Davis v. Billington, 51 F. Supp. 3d 97, 111 (D.D.C. 2014) (Walton, J.)

---

[12] In his supplemental brief, the plaintiff argues that the defendant's statement in its supplemental brief that it resolved employees' administrative grievances "by providing each affected employee full relief under the Back Pay Act[,]" Def.'s Suppl. Br. at 4, "is completely at odds with the [defendant's] prior statement that the Back Pay Act could not apply here because the [defendant's] human resources and pay policies could not be enforceable by way of the Back Pay [A]ct[,]" Pl.'s Suppl. Br. at 9.  As discussed above, a waiver of sovereign immunity must be clearly

(continued . . .)

(concluding that "where Congress has, in one comprehensive, specific statute, . . . . chosen not to waive sovereign immunity for the plaintiff's claims, it would be illogical for the Court to find that another, more general statute, like the Back Pay Act, constitutes a waiver of sovereign immunity for the very same claims"); cf. Am. Fed. of Gov't Emps., Local 41, AFL-CIO v. Califano, 453 F. Supp. 550, 552 (D.C. Cir. 1978) (holding that the Back Pay Act is "not jurisdictional in character"); Gilbert v. Fed. Deposit Ins. Corp., 950 F. Supp. 1194, 1197 (D.D.C. 1997) (holding that the Back Pay Act "does not create an alternative cause of action, rather it is an auxiliary measure that only operates at the relief stage").[13]

In sum, without an underlying claim over which the Court has subject-matter jurisdiction and for which sovereign immunity has been waived, the Declaratory Judgment Act and the Back Pay Act do not confer jurisdiction on the Court over the plaintiff's claim that the defendant's pay policy entitles him to environmental hazard pay. Accordingly, the Court must dismiss Count III of the plaintiff's Amended Complaint for lack of jurisdiction.

---

(. . . continued)

expressed in statutory text, see Lane, 518 U.S. at 192; therefore, the defendant's statement in its supplemental brief does not affect the Court's conclusion that the Back Pay Act does not waive sovereign immunity over the plaintiff's claim regarding the defendant's pay policy. Furthermore, the Court sees no reason why an entity with sovereign immunity from judicial review would not be free to voluntarily conform its behavior to a law, even if the entity's compliance is not subject to judicial review.

[13] The plaintiff argues that "the [District of Columbia] Circuit has interpreted the Back Pay Act to apply to FLSA claims[, ]specifically as a waiver of sovereign immunity for interest claims arising from a violation of the FLSA[.]" Pl.'s Opp'n at 11 (citing Soc. Sec. Admin., Balt., Md. v. Fed. Lab. Rels. Auth., 201 F.3d 465, 468 (D.C. Cir. 2000) ("We have recognized the Back Pay Act as a congressional waiver of sovereign immunity from interest claims on awards arising under other statutes, such as the FLSA.")). However, the Circuit's opinion in Social Security Administration is inapposite here. Count III is neither an "interest claim[,]" nor a claim "arising under [an]other statute[,]" Soc. Sec. Admin., 201 F.3d at 468; see Am. Compl. ¶¶ 44–47, because no statute permits the Court to review the plaintiff's claim that the defendant failed to comply with its own pay policy, see supra note 4, at 8. Therefore, Social Security Administration does not change the Court's conclusion that the United States has not waived sovereign immunity as to Count III.

**C.    Count I**

Finally, the Court turns to Count I of the Amended Complaint, in which the plaintiff alleges that he is entitled "to an order in mandamus or, alternately[,] pursuant to the [APA,] compelling" the defendant "to comply with its own regulations" regarding the assignment of "employees such as the [p]laintiff to work with environmental hazards[.]"  Am. Compl. ¶ 38. The defendant seeks to dismiss Count I because "[t]he APA does not apply to the [l]egislative [b]ranch[,]" Def.'s Mem. at 15, and "[t]he Mandamus Act does not waive sovereign immunity against any branch of the government[,]" id. at 16.  For the reasons stated below, the Court agrees with the defendant that the Court lacks jurisdiction over Count I.

**1.   The APA**

The Court begins with the defendant's arguments regarding the portion of Count I that alleges that the "[d]efendant's refusal to comply with its own regulations entitles [the p]laintiff to an order . . . pursuant to the [APA] compelling the [defendant] to follow its mandatory obligations."  Am. Compl. ¶ 38.  The defendant argues that "[t]he APA does not apply to the [l]egislative [b]ranch, of which the [defendant] is a part[,]" and therefore, any purported claims against [the defendant] based on the APA should be dismissed."  Def.'s Mem. at 15–16.  In response, the plaintiff argues that "because the [defendant] does not perform a function of the Congress and is not an [a]uxiliary of the Congress, the APA does not exclude the [defendant] from coverage[.]"  Pl.'s Opp'n at 15.

For claims for non-monetary relief, the APA operates as a limited waiver of sovereign immunity for "claim[s] that an agency or an officer or employee thereof acted or failed to act in an official capacity[.]"  5 U.S.C. § 702; see also Clark v. Library of Congress, 750 F.2d 89, 102 (D.C. Cir. 1984) ("With respect to claims for non-monetary relief, the 1976 amendments to § 702 of the [APA] . . . eliminated the sovereign immunity defense in virtually all actions for

non-monetary relief against a [United States] agency or officer acting in an official capacity."). However, this waiver explicitly does not apply to "the Congress[,]" among other exemptions.  Id. § 701(b)(1)(A).  As a former member of this Court noted in Vanover v. Hantman, 77 F. Supp. 2d 91 (D.D.C. 1999), "[t]he [District of Columbia] Circuit has 'interpreted the APA exemption for 'the Congress' to mean the entire legislative branch.'"  Id. at 100 (quoting Wash. Legal Found. v. U.S. Sent'g Comm'n, 17 F.3d 1446, 1449 (D.C. Cir. 1994) ("Washington Legal Foundation I" or Wash. Legal Found. I")[14]); see also Wash. Legal Found. I, 17 F.3d at 96 (noting "that the Library of Congress[—]part of the legislative branch but a separate entity from 'the Congress,' narrowly defined[—]is exempt from the APA because its provisions do not apply to 'the Congress'—that is, the legislative branch").  In Vanover—another case brought against the defendant—another member of this court applied this Circuit precedent to hold that, because the defendant "is considered part of the legislative branch[,] . . . the APA's waiver [of sovereign immunity] is inapplicable" to claims against the defendant. 77 F. Supp. 2d at 100.  The Court agrees with the Vanover court, see id., and the defendant, see Def.'s Reply at 12–13, that the Circuit's precedent clearly mandates that the APA's waiver of sovereign immunity does not apply to the defendant because the defendant is part of the legislative branch.

The plaintiff's arguments to the contrary are unconvincing.  The plaintiff argues that "according to [ ] Circuit precedent, only agencies of the Congress that perform [c]ongressional functions should be covered by the exemptions included in the APA[,]" and therefore, "because the [defendant] does not perform a function of the Congress and is not an auxiliary of the Congress, the APA does not exclude the [defendant] from coverage[.]"  Pl.'s Opp'n at 14.

---

[14] The parties' arguments discuss two different District of Columbia Circuit decisions in the Washington Legal Foundation v. United States Sentencing Commission case.  Therefore, for ease of reference, the Court refers to the first decision, 17 F.3d 1446 (D.C. Cir. 1994), as "Washington Legal Foundation I," and the second decision, 89 F.3d 897 (D.C. Cir. 1996), as "Washington Legal Foundation II[.]"

However, the legal authority cited by the plaintiff does not support this proposition.   In fact, none of the cases cited by the plaintiff discuss the scope of the exemption for "the Congress" in § 701(b)(1)(A).  See generally Pl.'s Opp'n at 13–15.  Rather, the plaintiff only cites to decisions that discuss whether the exemption for "the courts of the United States" from the APA's waiver of sovereign immunity, see 5 U.S.C. § 701(b)(1)(B), applies to all "entities within the judicial branch[,]" Pl.'s Opp'n at 13.  See id. (citing Wash. Legal Found. I, 17 F.3d at 1449 (discussing in dicta case law regarding whether the APA's exemption for 'the courts of the United States' applies to the United States Sentencing Commission); Pickus v. U.S. Bd. of Parole, 507 F.2d 1107, 1111 (D.C. Cir. 1974) (noting that the Probation Service is exempted from the APA's waiver of sovereign immunity because of "its status as an auxiliary of the courts, which, unlike agencies of the executive branch, are specifically excluded" under the APA, and concluding that the Board of Parole, as a "agenc[y] of the executive branch[,]" is not similarly exempted)).  Moreover, the case law is clear that, regardless of the scope of the exemption for "the Courts of the United States[,]" 5 U.S.C. § 701(b)(1)(B), the exemption for "the Congress" applies to "the entire legislative branch[.]"  See Wash. Legal Found. I, 17 F.3d at 1449 ("The [ ] Circuit has 'interpreted the APA exemption for 'the Congress' to mean the entire legislative branch.'").  Accordingly, the Court concludes that it lacks jurisdiction over Count I to the extent that the plaintiff alleges that he is entitled to relief pursuant to the APA.

**2.   The Mandamus Act**

The Court next addresses the defendant's arguments regarding the portion of Count I that alleges that the plaintiff is "entitle[d] [ ] to an order in mandamus . . . compelling the [defendant] to follow its mandatory obligations."  Am. Compl. ¶ 38.  The defendant argues that "[t]he Mandamus Act does not waive sovereign immunity against any branch of the government[,]" and therefore the plaintiff's "claim for mandamus [ ] should be dismissed for lack of

jurisdiction."  Def.'s Mem. at 16.  In response, the plaintiff argues that "subject[-]matter jurisdiction exists under the Mandamus Act [because he] can demonstrate that the [defendant] has a mandatory duty with respect to the environmental hazard procedures found in [the defendant's h]uman [r]esources [m]anual."  Pl.'s Opp'n at 16.

Pursuant to the Mandamus Act, "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  28 U.S.C. § 1361.  "It is well[-]settled that this statute does not by itself waive sovereign immunity."  Wash. Legal Found. v. U.S. Sent'g Comm'n, 89 F.3d 897, 901 (D.C. Cir. 1996) ("Washington Legal Foundation II" or "Wash. Legal Found. II").  However, there is an exception to this general rule—the "so-called Larson-Dugan exception to sovereign immunity[.]"  Id.  Pursuant to this exception, "[i]f a plaintiff seeks a writ of mandamus to force a public official to perform a duty imposed upon him in his official capacity, [ ] no separate waiver of sovereign immunity is needed" because "[w]here the officer's powers are limited by statute, his actions beyond those limitations are considered individual and not sovereign actions."[15]  Id. (internal quotation marks omitted).

The Court concludes that the Larson-Dugan exception is inapplicable here because the plaintiff has identified no statutory source of authority that limits the defendant's actions regarding environmental hazard conditions.  See Larson, 337 U.S. 682, 689 ("[W]here [an] officer's powers are limited by statute, his [or her] actions beyond those limitations are considered individual and not sovereign actions" because "[t]he officer is not doing the business

---

[15] Although the plaintiff does not identify the Larson-Dugan exception by name, see generally Pl.'s Opp'n; Pl.'s Suppl. Br., it appears from his quotation of Washington Legal Foundation II that he is referring to the Larson-Dugan exception, compare Pl.'s Opp'n at 16 ("In Wash[ington] Legal Foundation[ II], the [ ] Circuit recognized that 'if a plaintiff seeks a writ of mandamus to force a public official to perform a duty imposed upon him in his official capacity, [ ] no separate waiver of sovereign immunity is needed." (quoting Wash. Legal Found. II, 89 F.3d at 901)), with Wash. Legal Found. II, 89 F.3d at 901 (describing the above quotation as the "so-called Larson-Dugan exception to sovereign immunity").

which the sovereign has empowered him [or her] to do[,] or he [or she] is doing it in a way which the sovereign has forbidden." (emphasis added)).  The plaintiff argues that "no separate waiver of sovereign immunity is needed" here because he "can demonstrate that the [defendant] has a mandatory duty with respect to the environmental hazard procedures found in the [defendant's h]uman [r]esources [m]anual."  Pl.'s Opp'n at 16.  However, to the extent that the defendant's human resources manual imposes any duty on the defendant—a question the Court need not reach—the duty does not stem from a statute, see Wash. Legal Found. II, 89 F.3d at 901 ("Where the officer's powers are limited by statute, his actions beyond those limitations are considered individual and not sovereign actions" (emphasis added)); U.S. ex rel. McLennan v. Wilbur, 283 U.S. 414, 419 (1931) ("The law must not only authorize the demanded action, but require it[.]" (emphasis added)), because the defendant's human resources manual is not a statute, see supra note 4, at 8.[16]  Accordingly, the Court concludes that it also lacks jurisdiction over Count I to the extent that the plaintiff alleges that he is entitled to relief pursuant to the Mandamus Act.

---

[16] In his opposition, the plaintiff argues that Monmouth Medical Center v. Thompson, 257 F.3d 807 (D.C. Cir. 2001), and Baptist Memorial Hospital v. Sebelius, 603 F.3d 57 (D.C. Cir. 2010), support his argument that "mandamus jurisdiction lies in this case" due to the "series of mandatory duties on the part of the [defendant]" in the defendants' human resources manual.  Pl.'s Opp'n at 17 (citing Monmouth Med. Ctr., 257 F.3d at 814). Specifically, the plaintiff argues that, in Monmouth Medical Center, the Circuit "held that a Medicare reimbursement regulation, 42 U.S.C. § 405.1885(b)[,] imposed a clear duty on the Secretary [of the Department of Health and Human Services] (working through fiscal intermediary contractors) . . . because of the use of the mandatory term 'shall.'"  Pl.'s Opp'n at 17–18 (citing Monmouth Med. Ctr., 257 F.3d at 814); see also id. at 18 (stating that, in Baptist Memorial Hospital, the Circuit "referr[ed] to Monmouth and explain[ed that the Circuit 'held that because [§] 405.1885(b) speaks in mandatory terms, it imposes a nondiscretionary duty on the Secretary, enforceable through mandamus'" (quoting Baptist Mem'l Hosp., 603 F.3d at 61)).  However, the Monmouth Medical Center decision addressed an executive agency regulation interpreting the Medicare Act, see 257 F.3d at 814, and did not discuss sovereign immunity, see generally id.  Accordingly, neither the Circuit's conclusion in Monmouth that an executive agency regulation can form the basis for an action in mandamus nor its discussion of Monmouth with Baptist Memorial Hospital conflicts with the Court's conclusions in this case that (1) the Mandamus Act "does not by itself waive sovereign immunity[,]" Wash. Legal Found. II, 89 F.3d at 901; and (2) the defendant's human resources manual—not being a statute—lacks the authority to trigger application of the Larson-Dugan exception.

## IV.    CONCLUSION

For the foregoing reasons, the Court concludes that it must grant the defendant's motion to dismiss for lack of subject-matter jurisdiction.

**SO ORDERED** this 14th day of June, 2021.[17]

REGGIE B. WALTON
United States District Judge

---

[17] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.